UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUANN KAY NELSON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 16-cv-00594-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 22 |

## INTRODUCTION

    Plaintiff Luann Kay Nelson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin ("Defendant"), the Acting Commissioner of the Social Security Administration ("SSA"), which denied Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-Motions for Summary Judgment. Pl.'s Mot., Dkt. No. 18; Def.'s Resp., Dkt. No. 20; Def.'s Mot., Dkt. No. 22.[1] Plaintiff has not opposed Defendant's Motion. *See* Not. of Submission on Briefs, Dkt. No. 21. Pursuant to Civil Local Rule 16-5, the parties submit their motions on the papers without oral argument. Both parties have consented to this Court's jurisdiction. Dkt. Nos. 7, 8. Now, having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion for the reasons set forth below.

//

---

[1] Defendant originally docketed its cross-motion as a "response" in ECF. *See* Dkt. No. 20. Defendant subsequently corrected the docketing error by refiling the same document as a "motion." *See* Dkt No. 22.

**SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

Plaintiff developed vestibular neuropathy, right-sided spine pain, visual disturbances, balance problems, dizziness, confusion, cervical spine and right-sided weakness, carpal tunnel syndrome, thoracic outlet syndrome, degenerative disc disease, migraines, exhaustion, and anxiety. AR 21, 179-80, 347. On May 7, 2012, she filed a claim for Disability Insurance Benefits, alleging disability beginning on April 9, 2011. AR 179-80. On October 3, 2012, the SSA denied Plaintiff's claim, finding Plaintiff did not qualify for disability benefits. AR 76-90. Plaintiff subsequently filed a request for reconsideration, which SSA denied on May 9, 2013. AR 91-108. On May 22, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 127-28. ALJ Amita Tracy conducted a hearing on March 24, 2014. AR 32-75. Plaintiff testified in person at the hearing and was represented by Dan McCaskell, a non-attorney claimant representative. AR 34, 38-68. The ALJ also heard testimony from vocational expert Howard Goldfarb. AR 68-74.

**A.     Opinion of the Examining Physician Melody Samuelson**

Examining Physician Melody Samuelson performed a comprehensive psychological evaluation of Plaintiff. AR 953-57. Dr. Samuelson administered a mental status examination and diagnosed mood disorder due to general medical condition. AR 956. She assessed the following limitations: ability to understand, remember and carry out simple one or two-step job instructions (unimpaired); ability to do detailed and complex instruction (mildly impaired); ability to relate and interact with co-workers and public (unimpaired); ability to maintain concentration and attention, persistence and pace (moderately impaired); ability to associate with day-to-day work activity, including attendance and safety (moderately impaired); ability to accept instructions from supervisors (unimpaired); ability to maintain regular attendance in the work place and perform activities on a consistent basis (moderately impaired); and ability to perform work activities without special or additional supervision (mildly impaired). AR 957.

Dr. Samuelson wrote Plaintiff presented "with symptoms of depression, to include fatigue, lack of interest in daily activities. She is often in pain and will sleep excessively. She would not

be appropriate for work of any sort. She is not able to work for a sustained period." *Id*. Dr. Samuelson further wrote, "[f]rom the psychiatric standpoint, the claimant's condition is deemed as fair." *Id*.

**B.     Additional Medical Evidence**[2]

Debra Zilavy, PhD, treated Plaintiff between March 15, 2012 and July 18, 2012. She produced her treatment notes to the SSA, but did not complete the requested Mental Disorder Questionnaire Form, nor otherwise indicate Plaintiff's ability to attend work or stay on task. *See* AR 866-85.

None of the practitioners who treated Plaintiff at the North Bay Psychiatric Associates between September 6, 2011 and December 3, 2012 addressed Plaintiff's ability to attend work or stay on task. *See* AR 1026-62.

Dr. Jennifer Beck was Plaintiff's psychiatrist between June 11, 2012 and August 24, 2012. *See* AR 1125-1240. She diagnosed Plaintiff with major depressive disorder (initially diagnosed as "severe, recurrent" and at end as "mild-moderate depression"), but wrote on her last appointment notes that Plaintiff's response to treatment was "positive" and that her current mental status was "very good" due to her response to new medication. AR 1129, 1131. On August 22, 2012, Plaintiff reported her medications were "right and that she feels calm & happy"; she indicated her mood level was high (9 out of 10), her pain level was low (2 out of 10). AR 1168. Dr. Beck did not address Plaintiff's ability to attend work or stay on task.

An SSA psychiatrist also reviewed Plaintiff's records the SSA had received through October 12, 2012 and did not find severe mental impairment because Plaintiff's conditions had lasted less than 12 months and appeared to be responding to prescribed treatment. AR 86.

On reconsideration, another SSA psychologist Elizabeth Covey, PsyD, found mild

---

[2] This section describes the evidence Plaintiff identified in her Separate Statement of the Administrative Record, as supplemented by Defendant's Separate Statement where appropriate. *See* Pl.'s Sep. Stmt., Dkt. No. 19; Def.'s Sep. Stmt., Dkt. No. 20-1. In their Separate Statements, the parties identified "all relevant medical evidence of record." Order re Stmt. of Rec. at 1, Dkt. No. 13.

3

restrictions on Plaintiff's activities of daily living and her social functioning, and moderate limitations on maintaining concentration, persistence, or pace. AR 101. She noted Plaintiff's "overall cognitive is consistently assessed as intact . . . with some limitations in CPP [concentration, persistence, and pace]." AR 101. Dr. Covey further noted that due to Plaintiff's symptoms, she would only be able to successfully carry out simple and detailed instructions on a consistent basis throughout a normal work day. AR 101-02. Dr. Covey specifically wrote that Plaintiff was "not significantly limited" in ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. AR 105. She found Plaintiff's ability to complete a normal workday and workweek without interruptions from her symptoms and ability to perform at a consistent pace without an unreasonable number and length of rest period both moderately limited. AR 106. In explaining the basis for this limitation, Dr. Covey explained Plaintiff's overall MER ("medical evidence of record") indicated she appeared capable of carrying out simple and detailed, but not complex, instructions on a consistent basis in a work environment. *Id*. Thus, Dr. Covey explicitly opined Plaintiff could work on a consistent basis as long as she was limited to simple and detailed instructions.

On January 2, 2014, Dr. Tracy Newkirk examined Plaintiff. AR 1083-87. She described in detail the results of her examination and noted Plaintiff had an essentially normal mental health status. She also observed Plaintiff was "better" with respect to her depression and was able to "partially manage" with medications. AR 1083.

C.     **The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[3] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer*

---

[3] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

1  *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential

2  inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r*

3  *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the

4  Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v.*

5  *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

6  At the first step, the ALJ must initially determine whether the claimant is performing

7  "substantial gainful activity," which would mandate that the claimant be found not disabled

8  regardless of medical condition, age, education, and work experience.  20 C.F.R. §

9  404.1520(a)(4)(i), (b).  Here, the ALJ determined that Plaintiff had not performed substantial

10  gainful activity since April 9, 2011.  AR 20.

11  At step two, the ALJ must determine, based on medical findings, whether the claimant has

12  a "severe" impairment or combination of impairments as defined by the Social Security Act.  20

13  C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled*.  Id*.

14  § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe impairments:

15  "right vestibu[lar] neuropathy; right-sided spine pain; visual disturbances; anxiety; fatigue; right

16  carpal tunnel syndrome; thoracic outlet syndrome; migraines; and degenerative disc disease."  AR

17  21.

18  If the ALJ determines that the claimant has a severe impairment, the process proceeds to

19  the third step, where the ALJ must determine whether the claimant has an impairment or

20  combination of impairments that meet or equal a "listed impairment."  *See* 20 C.F.R. §

21  404.1520(a)(4)(iii) (the "Listing of Impairments").  If a claimant's impairment either meets the

22  listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is

23  conclusively presumed to be disabled, without considering age, education and work experience.

24  *Id*. § 404.1520(d).  Here, the ALJ determined that Plaintiff did not have an impairment or

25  combination of impairments that meets the listings.  AR 21.

26  Before proceeding to step four, the ALJ must determine the claimant's Residual Function

27  Capacity ("RFC").  20 C.F.R. § 404.1520(e).  RFC refers to what an individual can do in a work

28

5

setting, despite mental or physical limitations caused by impairments or related symptoms. *Id*. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are non-severe. *Id*. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(h) with postural, manipulative, and mental limitations. The claimant is able to occasionally perform all postural activities, such as climbing ladders/ropes/scaffolds; balancing; stooping; kneeling; c[rou]ching; and crawling. The claimant has manipulative limitations of the right upper extremity in that she is limited to occasional overhead reaching, frequent fingering; and frequent handling. Also, she is unable to perform forceful gripping over 20 pounds with her right upper extremity. Mentally, the claimant is limited to simple, routine, repetitive tasks, superficial interaction with co-workers and the public, and low stress work defined as no work at a production rate pace but can perform goal orientated tasks." AR 22.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. *Id*. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could not perform any past relevant work. AR 25.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined

6

Claimant could perform jobs that exist in significant numbers in the national economy. AR 25.

### D.   ALJ's Decision and Plaintiff's Appeal

On July 28, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 15-31. This decision became final when the Appeals Council declined to review it on December 10, 2015. AR 1-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Compl. On July 30, 2016, Plaintiff filed the present Motion for Summary Judgment. On August 17, 2016, Defendant filed a Cross-Motion for Summary Judgment. The single issue on appeal before this Court is whether the ALJ improperly rejected the opinion of Examining Physician Samuelson.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, SSA*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

1  "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the

2  agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

### A.     Evaluating Medical Evidence

Physicians opining about a social security claimant's condition "may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)); *see also* 20 C.F.R. § 404.1527(d).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Reddick*, 157 F.3d at 725 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citation omitted).

Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, she errs. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, an ALJ errs when she rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *See id*.

8

**B.     The Parties' Arguments**

Plaintiff argues the ALJ's ultimate conclusion that she can perform light work, implicitly rejects Dr. Samuelson's opinion that she was "significantly limited, i.e., moderately" in two distinct functions: "the ability to associate with day to day work activity, including attendance and safety; and the ability to maintain regular attendance in the work place and perform activities on a consistent basis." Pl.'s Mot. at 6-7. Plaintiff argues these functions are necessary for unskilled work, and that the ALJ (1) simply ignored Dr. Samuelson's findings that Plaintiff was "moderately limited" in these two functions, and (2) did not explain why the ALJ rejected this probative evidence. *Id*. at 7-8. She further argues the ALJ simply ignored Dr. Samuelson's opinion that she "would not be appropriate for work of any sort. She is not able to work for a sustained period." *Id*. at 5 (quoting AR 957), 7-8. Plaintiff contends the ALJ was required to explain the weight given to the opinions of a physician who examined her at the request of the State agency, and to explain why she did not adopt Dr. Samuelson's opinion.

Defendant argues the ALJ included moderate limitations in the RFC, and thus in fact incorporated the limitations Dr. Samuelson articulated in her report. Def.'s Mot. at 4-6. Defendant also argues the ALJ appropriately found Plaintiff was able to work despite Dr. Samuelson's statement that Plaintiff was unable to "work for a sustained period." *Id*. at 6-7.

**C.     Analysis**

In her decision, the ALJ describes Dr. Samuelson as "opin[ing] that the claimant's ability to perform simple instructions was unimpaired, while her ability to perform detailed and complex instructions was mildly impaired. She was unimpaired in interacting with co-workers and supervisors. However, her ability to maintain attention, concentration, persistence, and pace was moderately impaired. Furthermore, the claimant ability to maintain regular attendance in the workplace and perform activities on a consistent basis was moderately impaired." AR 23 (citing Exhibit 17F, AR 953-57). This accurately reflects Dr. Samuelson's opinion. *See* AR 953-57.

The ALJ did not specifically adopt or reject any part of Dr. Samuelson's opinion at either Step 2 or Step 4 of her analysis. At Step 2 of her analysis, the ALJ found Plaintiff was moderately

9

limited in her ability to maintain attention, concentration, persistence, and pace. AR 21. This is consistent with Dr. Samuelson's opinion. *See* AR 957 ("Ability to maintain concentration and attention, persistence and pace: Moderately Impaired."). At Step 4 of her analysis, the ALJ concluded Plaintiff was capable of performing light work with postural, manipulative, and mental limitations. AR 24. The ALJ identified the following mental limitations as applicable to Plaintiff: (1) superficial interaction with co-workers and the public; (2) simple, repetitive, routine mental tasks; and (3) "low stress work, defined as no work at a production rate pace[.]" *Id*. The ALJ did not reject Dr. Samuelson's opinion in devising these limitations. On the contrary, the ALJ's limitations are either consistent with or more stringent than the limitations identified by Dr. Samuelson, who opined Plaintiff was "unimpaired" in her ability to relate and interact with co-workers and the public; in her ability to accept instructions from others; and in her ability to understand, remember and carry out simple one or two-step job instructions. AR 957. Plaintiff acknowledges that limiting her to simple, repetitive tasks is consistent with moderate limitations in concentration, persistence, and pace. *See* Pl.'s Mot. at 7 n.1 (citing *Sabin v. Astrue*, 337 Fed. App'x 617, 620-21 (9th Cir. 2009) (no error where ALJ found claimant could perform "simple and repetitive tasks on a consistent basis" despite moderate difficulties in concentration and pace)); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

In addition, the ALJ limited Plaintiff to "low stress" work that would not be performed at a production pace. AR 24. This limitation was added after the ALJ accurately described Dr. Samuelson's opinion as supporting "moderate" limitations for Plaintiff's ability to maintain attention, concentration, persistence and pace; as well as ability to maintain regular attendance and perform activities on a consistent basis. AR 23. Importantly, Dr. Samuelson did not opine how many days a month Plaintiff would be expected to miss work, nor the percentage of time Plaintiff would be off-task. *See* AR 957. Dr. Samuelson did not indicate Plaintiff's mild to moderate limitations would result in excessive absences beyond a number customarily tolerated in the

10

workplace, nor that Plaintiff would be unable to sustain concentration and attention required to perform day to day work activity. Plaintiff has pointed to no evidence in the AR that any of her treating or examining physicians opined that she would miss work more than a "moderate" number of days, be off-task more than a "moderate" amount of time during the day, or require an atypical number or length of rest periods. *See supra*, at 2-4. Although no treating or examining physician opined specifically about Plaintiff's ability to attend work and stay on task, Dr. Covey opined Plaintiff would "be able to successfully carry out simple and detailed instructions on a consistent basis throughout a normal work day[;]" was not significantly limited in her ability to maintain regular attendance and be punctual within customary preferences; and that she appeared to be capable of carrying out simple and detailed, but not complex, instructions on a consistent basis in a work environment. AR 101-05. The ALJ did not err in failing to include limitations that were not articulated by any physician who treated or examined Plaintiff, and that were not supported by the medical evidence of record.

The ALJ also did not reject Dr. Samuelson's medical opinion when she found Plaintiff could perform some type of work despite suffering from some moderate limitations: "Moderate mental functional limitations are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks." *Herrera-Schmitz v. Comm'r of Soc. Sec.*, 2015 WL 5258701, at *10 (N.D. Cal. Sept. 9, 2015) (citing cases). On the contrary, a claimant with moderate limitations "is still able to function satisfactorily." HALLEX[4] 1-2-5-20, 1992 WL 601808; *see also Cantu v. Colvin*, 2015 WL 1062101, at *13-14 (N.D. Cal. Mar. 10, 2015) (the SSA "defines a moderate limitation as there is more than a slight limitation in this area, but the individual can still function satisfactorily[; ] the ALJ's explanation of 'moderate' limitation as one which still allows the individual to 'perform the function satisfactorily' was proper" (citations and internal quotation marks omitted)).

---

[4] HALLEX is the SSA's Hearings, Appeals and Litigation Manual. It is "strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000).

11

Finally, in a section of her report entitled "Discussion of Claimed Conditions," Dr. Samuelson writes that Plaintiff "would not be appropriate for work of any sort. She is not able to work for a sustained period." AR 957. The Court notes these statements do not appear in the Functional Assessment section of Dr. Samuelson's report, and it is not clear to the undersigned whether this represents Dr. Samuelson's opinion of Plaintiff's symptoms or a summary of Plaintiff's self-assessment of her condition. Defendant does not address the location of these statements or their source but suggests the opinion relates to Plaintiff's physical condition or self-reported pain, not the psychiatric conditions at issue in this appeal. *See* Def.'s Mot. at 6-7. In any event, to the extent Dr. Samuelson's statement is an assessment of Plaintiff's psychiatric limitations, it is not well-supported and not consistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion[;]" "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Indeed, the statement is inconsistent with Dr. Samuelson's own assessment that Plaintiff's psychiatric condition was "fair" and that her functional assessment ranged from "unimpaired" to "moderate" but included no "severe" limitations. The medical evidence in the record does not support a finding that Plaintiff's psychiatric conditions make Plaintiff inappropriate "for work of any sort" or prevent her from working "for a sustained period." To the extent Dr. Samuelson opines that Plaintiff "would not be appropriate for work of any sort[,]" the ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ did not reject Dr. Samuelson's opinion in evaluating Plaintiff's RFC. The Court accordingly finds the AJL used the correct legal standards in evaluating the medical opinions of record, and that her decision is supported by substantial evidence.

//

**CONCLUSION**

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Summary Judgment, and **GRANTS** Defendant's Motion for Summary Judgment. The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

Dated: October 13, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge